J-S27031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COURTNEY WASHINGTON JR. | : | |
| | : | |
| Appellant | : | No. 875 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 8, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008517-2019

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

DISSENTING MEMORANDUM BY OLSON, J.:     **FILED: APRIL 26, 2022**

As I believe that this case should not be remanded for a hearing on the suppression motion filed by Appellant, Courtney Washington, Jr., I respectfully dissent.  Moreover, as Appellant's other two issues do not warrant relief, I would affirm the judgment of sentence.

The learned Majority concludes that the trial court erred in not conducting an evidentiary hearing on Appellant's suppression motion pursuant to Rule 581 of the Pennsylvania Rules of Criminal Procedure.  Specifically, the Majority finds that "[t]he trial court and the Commonwealth have adduced no procedural mechanism or provided any support to contradict the unambiguous text of [] Rule [581].  Absent any basis to permit quashal when faced with a suppression motion, the [trial] court was obligated to go through the rigid

_____

[*] Retired Senior Judge assigned to the Superior Court.

dictates as enumerated in Rule 581…." Majority Memorandum, at 7. I agree that Rule 581 is unambiguous and sets forth the procedure that must be followed by a trial court in ruling on a suppression motion. Where I part company with my learned colleagues is the way in which I view the procedural posture of this case and the ambiguity of the motion that was before the trial court. Moreover, I believe that counsel for Appellant acquiesced to the procedure ultimately followed by the trial court in ruling on the motion before it and, therefore, the issue has been waived.

In the motion to suppress, Appellant asserted that the police violated Appellant's constitutional rights by 1) improperly disseminating a poor and grainy SMS photograph to another police officer causing that officer to incorrectly identify Appellant as the perpetrator; 2) never conducting an independent investigation of witnesses at the scene for purposes of identifying the perpetrator; and 3) providing a single photograph to the identifying witness that compromised the initial identification and any courtroom identification. Appellant's Omnibus Pretrial Motion, ¶ 9. Thus, Appellant sought to suppress the officer's identification of Appellant as the perpetrator.

In response to Appellant's motion, the Commonwealth argued that the officer's identification of Appellant from the photograph should not be suppressed as it was not the product of an impermissibly suggestive procedure. Moreover, any discrepancy or irregularity in the identification process was not so violative of due process requiring suppression of the evidence. Commonwealth's Response to Omnibus Pretrial Motion, at 4, 6.

Instead, "these issues would be more proper for the fact finder to consider in judging the credibility and weight to afford such evidence." *Id.* at 6.

On March 10, 2020, a hearing was held before the trial court on the omnibus pretrial motion. At the outset of the hearing, the trial court asked the Commonwealth whether it had any witnesses to present. In response, the assistant district attorney made an oral motion to quash[1] the motion to suppress on the basis that the assertions made by Appellant were not a proper basis for a pretrial suppression motion. Instead, the assistant district attorney argued that the issues surrounding the identification of Appellant as the perpetrator were better left for the factfinder. N.T., 3/10/20, at 5. The assistant district attorney went on to state "I don't think it is proper to address [these issues] pretrial in a suppression motion. I believe it is solely a credibility determination. **However[,] I'm prepared to proceed**." *Id.* at 6 (emphasis added). In response, counsel for Appellant argued that there were defects in the methods by which the police made the identification. Specifically, he asserted that there were questions regarding which photograph was shown to the officer who identified Appellant. He argued that only one photograph was sent to the identifying officer which was suggestive, no independent witnesses were shown the photograph to corroborate the

_____

[1] I agree with Appellant that a motion to quash was not appropriate. However, after reviewing the extensive argument made at the hearing held on March 10, 2020, I believe that the Commonwealth was actually seeking the denial of Appellant's suppression motion on the basis that the evidence was sufficient to establish identity. It was merely an inartful articulation of the relief being sought by the Commonwealth.

identification, and the affidavit of probable cause stated that the photograph used to identify Appellant was "a clear still photo of a black male actor holding a firearm shooting in the direction of the victim", however, no such photograph was produced. *Id.* at 9-10. Hence, Appellant's trial counsel argued that the identification process "never happened as the way [the attesting officer swore] under oath in the [a]ffidavit of [p]robable cause." *Id.* at 10. The trial court noted that trial counsel's argument suggested that counsel wanted to impeach the credibility of the officers. In response, trial counsel stated "I guess it is a mixed, it is a hybrid argument. Yes, there is impeachment but it also goes to the **insufficiency of what was shown**." *Id.* (emphasis added). After extensive argument, the trial court stated:

> [Trial counsel], I understand what you're saying. I'm just having a hard time with the idea of a suppression issue. You've raised all points that I'm sure you would vigorously challenge on cross-examination in the presentation of evidence in the case but how an officer's identification of a statement or of a photograph doesn't seem to be the stuff of suppression for a suggestive identification. It may be an incorrect identification or there may be other issues surrounding the quality of the photographs, the ability to view it, the officer's knowledge of [Appellant], all of those kinds of things that I'm sure you would ably explore.

*Id.* at 20. Again, trial counsel argued "I'm challenging the sufficiency or the method by which … the police employed to put [Appellant] in this chair right now. There is absolutely no independent evidence to suggest that [Appellant] is the person that did any of this." *Id.* at 21. The following dialogue then occurred between the trial court and trial counsel:

THE COURT: I understand everything that you're saying. It just appears to me that this is a trial issue. … I'm not seeing what it is I would be suppressing under the circumstances.

[COUNSEL] Understood.

THE COURT: Everything you're describing sounds like fair game at trial. …

[COUNSEL]: Your Honor, with some of the arguments that I made, **I actually ask if at this time I can raise an oral motion for habeas relief and I'd submit the [a]ffidavit of [p]robable [c]ause and also the transcripts from the preliminary hearing and I would argue the same issue**, the identification has yet to be shown that it was, in fact, [Appellant].

THE COURT: Now, that is a different issue. …

. . . . . . .

THE COURT: Where we appear to be at the moment is defense has made – **because I do believe what [trial counsel] is raising is more properly characterized in a habeas motion**.

. . . . . . . .

THE COURT: [Trial counsel], for purposes of making sure the record is cleaned up, I can do it one of two ways, I mean, do you want to amend your pretrial motion to include –

[COUNSEL]: Another part, a subpart?

THE COURT: -- a petition for writ of habeas corpus? **What we can do is simply incorporate the information that you**

> **characterized in the motion to suppress and characterize it as a petition for writ of habeas corpus?**
>
> [COUNSEL]: **That would be acceptable. When I was strategizing how I wanted to present it, I thought the issues were very similar and almost one and the same.** With that being in mind, I would add a part for petition for habeas corpus relief based on the same identification principles and the same arguments that were made today and at the preliminary hearing.

*Id.* at 22-26 (emphasis added). The trial court then took a recess to consider the materials presented by counsel. Upon reconvening, the trial court held as follows:

> I have before me an omnibus pretrial motion, a motion to suppress, and an oral motion for writ of habeas corpus based on the sufficiency of the evidence that was [adduced] at the preliminary hearing. I'll note in the preliminary matter many of the averments cited by the defense in the motion to suppress could be specifically incorporated for purposes of the habeas motion, specifically cites paragraph 6, no witnesses ever identified [Appellant], being present at the scene of the Roo Bar in McKeesport. Paragraph 7, no firearms ever recovered from [Appellant]. Paragraph 8, no physical or forensic evidence linked [Appellant] to the crime scene. Paragraph 9-B, that the police never conducted an independent investigation of the witnesses at the scene who could have identified the actors through the use of a photo array. 9-A, that the police utilized a photo attachment that was grainy captured under poor lighting conditions. That was shown to a member of another police department. I believe those are all averments that could be properly considered for a petition for habeas. As it was stated previously during the discussion regarding the motion, I don't believe that type of information can be properly characterized for a motion to suppress therefore we'll quash the motion on that ground. … After review, while I understand the arguments being made by the defense with regard to certain issues in this case, I believe given the limited standard

- 6 -

of review in a petition for a writ of habeas corpus, in the light most favorable to the Commonwealth, they have made out a prima facie case for the charges that were ultimately held for court. … I'm bound [] at this stage, [to] deny the petition for writ of habeas corpus as to all counts in the criminal information.

*Id.* at 28-30. Immediately following the trial court's ruling, the parties proceeded to a non-jury trial.

A review of the record reveals that a hearing was convened for the purpose of deciding Appellant's motion to suppress. At the outset of the hearing, the Commonwealth moved to quash the motion to suppress on the basis that the issues surrounding the officer's identification of Appellant as the perpetrator were better left for trial and were not the proper basis to suppress. The Commonwealth noted, however, that if the trial court were to deny the motion to quash, the Commonwealth was prepared to proceed with the evidentiary hearing. The trial court and counsel then began a lengthy discussion of whether a motion to suppress was the proper vehicle for deciding whether the officer's identification of Appellant should be excluded from evidence or whether that issue was more appropriately raised in the context of a *habeas corpus* petition. Ultimately, the trial court suggested that they "simply incorporate the information that [Appellant] characterized in the motion to suppress and characterize it as a petition for writ of habeas corpus." *Id.* at 25-26. Counsel for Appellant responded, "**[t]hat would be acceptable**. When I was strategizing how I wanted to present it, I thought the issues were very similar **and almost one and the same**." *Id.* at 26

- 7 -

(emphasis added). It was then agreed that Appellant's omnibus pretrial motion would be amended to include a petition for a writ of *habeas corpus* and that the trial court would review the transcript of the preliminary hearing and the affidavit of probable cause in ruling on the amended omnibus pretrial motion. After a recess, the trial court ruled on the pretrial motion by quashing the motion to suppress and denying the petition for a writ of *habeas corpus*. Following the trial court's ruling, the parties proceeded to a non-jury trial. At no time before or after the trial court ruled on the amended omnibus pretrial motion did counsel for Appellant object to proceeding without following the dictates of Rule 581, including holding an evidentiary hearing on the motion to suppress. Instead, Appellant's counsel agreed that the trial court would review the preliminary hearing transcript and the affidavit of probable cause in ruling upon the amended pretrial motion. "The failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue." *Commonwealth v. Tucker*, 143 A.3d 955, 961 (Pa. Super. 2016) (internal quotation omitted). Not only did Appellant's counsel not object, but he agreed to the procedure suggested by the trial court.[2] Therefore, I believe that the issue is waived.

_____

[2] During his closing argument, counsel for Appellant noted that Exhibit A, the transcript from the preliminary hearing, was "admitted in the pretrial motion to suppress that **turned into** a habeas petition." N.T., 3/11/20, at 215 (emphasis added).

Even if not waived, I fail to see what would be achieved by holding an evidentiary hearing on Appellant's motion to suppress. The crux of Appellant's argument is that the method by which the police used photographs for the purpose of having another officer identify Appellant was improper and suggestive. Additionally, Appellant argues that the testimony regarding the photographs used for identification does not comport with the photographs provided to Appellant. The evidence surrounding the identification of Appellant was provided at the preliminary hearing and the trial court reviewed the transcript prior to quashing the motion to suppress and denying the petition for writ of *habeas corpus*. Additionally, there was extensive testimony during the bench trial regarding the identification of Appellant. The trial court, as the finder of fact, heard extensive testimony regarding the manner by which Appellant was identified, reviewed the surveillance video taken from the Roo Bar, reviewed the photographs used to identify Appellant and heard thorough and exhaustive arguments surrounding the issue of identification. Subsequently, the trial court determined that the evidence was sufficient to identify Appellant and found him guilty of Count I – firearms not to be carried without a license.[3] He was acquitted of the remaining counts. I fail to see

_____

[3] Clearly, the trial court credited the identification testimony of Lieutenant William Shaw as described in detail *infra*. Additionally, and as important, Appellant was present during the trial and the trial court was able to view the photographs and the surveillance video and make its own conclusion as to whether the individual depicted therein was Appellant.

what an evidentiary hearing upon remand would accomplish. Accordingly, I cannot agree with the Majority that remand for an evidentiary hearing on Appellant's motion to suppress is warranted.

The general principles of law under which a claim of undue suggestiveness is evaluated bolster my conclusion that remand in this case would be futile. "In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003). "A court must assess the reliability of an out-of-court identification by examining the totality of the circumstances." *Commonwealth v. Johnson*, 139 A.3d 1257, 1278 (Pa. 2016). "A pre-trial identification violates due process only when the facts and circumstances demonstrate that the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification." *Id*.

Nevertheless, "in-court identifications, despite impermissibly suggestive pre-trial procedures, are admissible if there exists an independent basis for the identifications." *Commonwealth v. Abdul-Salaam*, 678 A.2d 342, 349 (Pa. 1996). As our Supreme Court explained:

> To allow an in-court identification following a suggestive pre-trial identification, the Commonwealth must establish, by clear and

convincing evidence, that the identification was not a product of the events occurring between the time of the crime and the in-court identification. Therefore, an in-court identification will be permitted if, considering the totality of the circumstances, the in-court identification had an origin sufficiently distinguishable to be purged of the primary taint.

In determining whether an independent basis exists for the identification, the factors to be considered in this determination are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Id.* (citations and quotations omitted).

This Court confronted an undue suggestiveness claim raised in the context of a motion to suppress in **Commonwealth v. Jackson**, 237 A.3d 1077 (Pa. Super. 2020) (unreported decision).[4], [5]  In that case, Jackson was charged as the perpetrator of a shooting that took place outside of a strip club

---

[4] We may cite to unreported decisions of this Court for their persuasive value. **See** Pa.R.A.P. 126(b) (non-precedential Superior Court decisions filed after May 1, 2019 may be cited for their persuasive value).

[5] My own research reveals that our sister courts in New York have also confronted, within the context of a motion to suppress, claims alleging undue suggestiveness where a non-eyewitness police officer identifies a suspect by viewing crime scene video surveillance. **See**, **e.g.**, **People v. Burton**, 191 A.D.3d 1311 (N.Y. App. Div. 2021) (holding, pretrial identification procedure used to identify defendant as shooter depicted in surveillance video was unduly suggestive, where police detective asked defendant's parole officer to view surveillance video and determine if he recognized anyone depicted therein and informed parole officer that defendant was the suspected shooter prior to showing him the video, and the parole officer identified defendant as the shooter in the video).

in Allegheny County. The shooting was captured by video surveillance and Jackson was identified by a parole officer whose agency was contacted by county homicide detectives on the day of the incident. Within days of the shooting, the parole officer viewed the video along with other law enforcement officials. Citing the suggestive circumstances of the out-of-court identification procedure, including facts which showed that the parole officer knew Jackson was wanted for questioning in connection with the shooting at the time law enforcement officers reviewed the surveillance video, Jackson moved to suppress the parole officer's out-of-court and in-court identifications. The trial court granted Jackson's motion, explaining:

> [Here,] we have a parole officer who found out on the day of the shooting that [Jackson] was wanted for questioning in connection with the shooting, who then was specifically contacted by the homicide unit for assistance in making the identification. We have an officer who was less than forthcoming about the nature of his contact with the detectives, who conducted his own Facebook investigation prior to watching the video and who learned what [Jackson] was wearing on the night in question. We have a procedure where the video was viewed by multiple people at the same time while there were discussions about what was being depicted on the video. Viewing the video with multiple other individuals in the same room at the same time while discussing the images being shown on the video makes the procedure highly suspect and creates a substantial likelihood of misidentification. Indeed, having multiple people attempt to make an identification together, at the same time, creates the potential for a "mutual reinforcement situation."
>
> Lastly, we have an identification that was made after four [ ] viewings, and an identification that was not based on face, appearance[,] or gait, but rather on the mere fact that [Jackson] was known to be "very close friends" with the victim and the fact that the suspect was wearing similar clothing to what [Jackson] was wearing in the Facebook picture. Accordingly, for all of these

- 12 -

reasons, the [trial] court [found] that the identification procedure in this case was so impermissibly suggestive that it created a substantial likelihood of irreparable misidentification such that the pretrial identification must be suppressed.

...

[Moreover,] the Commonwealth cannot meet its burden of proving that [Agent] Vojacek had an independent basis for the identification outside of the unduly suggestive identification procedure because [Agent] Vojacek was not an eyewitness to the crime. ...

The [trial] court also note[d] that the number and nature of contacts [the parole officer] previously had with [Jackson] is irrelevant given that he specifically testified that his identification was not based on the suspect's gait or the "face in and of itself" since the face was only visible for "one second." Thus, because the in-court identification is not based on the observation of the crime in this case, there is no independent basis for the identification, and [the parole agent] will be prohibited from making an in-court identification at trial[, as well].

***Jackson***, 237 A.3d 1077, at *3-4, *citing* Trial Court Opinion, 11/16/18, at 8-10 (citations omitted).

On appeal, the Commonwealth did not challenge the trial court's assessment that the video identification was unduly suggestive since, *inter alia*, the parole officer learned the identity of the suspect before he saw the video. Moreover, we agreed with the trial court that, since the parole officer was not present at the crime scene, there were no facts or circumstances which offered an independent basis for an in-court identification that purged the initial taint of undue suggestiveness. Hence, we affirmed the trial court's suppression ruling.

In contrast to the meritorious undue suggestiveness claim raised in *Jackson*, Appellant in this case neither alleged nor proved that the officer who identified him as the shooter knew him as a suspect before reviewing the photograph. Instead, Appellant argued to the trial court that his suppression claims were largely synonymous with his *habeas corpus* claims, which focused on the sufficiency, not the suggestiveness, of the police identification. *See* N.T., 3/10/20, 23. As I stated above, Appellant's motion to suppress asserted that the police violated his rights and incorrectly identified him as a shooter by disseminating a single, poor-quality photograph and failing to conduct an independent investigation of witnesses at the crime scene. These claims challenged the adequacy of the police identification, not its alleged suggestive nature. Likewise, at the preliminary hearing, counsel for Appellant examined the investigating officers at length regarding the methods and procedures they employed to identify Appellant as a shooter on the night in question. Again, the facts developed at the preliminary hearing focused **not** on the suggestiveness of the police identification but on the adequacy and sufficiency of the police investigation. In other words, despite multiple opportunities to do so, Appellant – before the trial court - forwarded no claim and cited no facts to suggest that investigators in this case identified Appellant as the individual depicted in the photograph before an identification was made. Ultimately, the trial court made the following findings.

> Appellant's contention that it was suggestive to show Lt. Shaw the photograph because he had previous interactions with Appellant

- 14 -

is unsupported by the facts. **The plain and simple fact is that at the time this picture was shown to Lt. Shaw police did not know who the male was in the video and/or still image**.

Trial Court Opinion, 1/20/21, at 7 (emphasis added). Under these circumstances, I would hold that a remand which allows Appellant to repackage and represent his meritless suppression claims is unwarranted.

Turning to Appellant's remaining two issues on appeal, I find that neither warrants relief and, therefore, I would affirm Appellant's judgment of sentence.

In his second issue, Appellant argues that the trial court erred in admitting Exhibits 2, 3 and 4; *i.e.*, two photographs of an individual wearing an opened white shirt (Exhibits 2 and 3) and a still photograph of two individuals sitting in a vehicle parked in a parking lot (Exhibit 4). Appellant asserts that none of these photographs match the description of the photograph that was cited in the affidavit of probable cause and that there is no evidence as to who took the photographs or the source of the photographs marked as Exhibits 2 and 3. Appellant's Brief at 29, 36. Appellant, therefore, argues that the trial court abused its discretion in admitting the three photographs as the Commonwealth failed to lay a proper foundation authenticating these exhibits and it did not provide sufficient evidence of the chain of custody of the photographs. *Id.* at 29-30.

"The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a

showing that the trial court abused its discretion." ***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa. Super. 2014). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id****.* at 749-750 (citations omitted). Regarding authentication, the following principle applies. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Physical evidence may be admitted at trial without demonstrating to an absolute certainty the precise chain of custody; the evidence need only establish a reasonable inference which the fact finder may or may not accept. ***Commonwealth v. Hudson***, 414 A.2d 1381, 1387 (Pa. 1980). "Physical evidence may be properly admitted despite gaps in testimony regarding custody." ***Commonwealth v. Feliciano****,* 67 A.3d 19, 29 (Pa. Super. 2013). Moreover, any issue regarding gaps in the chain of custody goes to the weight of the evidence, not its admissibility. ***Id.***

In this case, Lieutenant William Shaw of the City of Duquesne Police Department testified that his chief, Chief Dunleavy, told him of an incident in McKeesport, a neighboring city, and showed him a photograph on his cell phone. N.T., 3/10/20, p. 57. The Lieutenant knew Appellant and his family from living and working in Duquesne and he identified Appellant as the person

in the photograph. *Id.* at 57, 67-68. Lieutenant Shaw testified that Exhibit 2 was a fair and accurate reproduction of the photograph that he was shown on Chief Dunleavy's phone and from which he identified Appellant. *Id.* at 59. He was also shown Exhibit 3 and identified Appellant as the person in that photograph. *Id.* at 62. Finally, Lieutenant Shaw reviewed the photograph marked as Exhibit 4 and identified the passenger in the vehicle as Appellant. Although Lieutenant Shaw did not say who took the photographs, he testified that Exhibit 2 was a reproduction of the photograph that he was shown on his chief's cell phone and he was able to identify Appellant as the person depicted in each photograph.

Detective Shawn Morris of the City of McKeesport Police Department testified that he received the surveillance video from the Roo Bar.[6] He reviewed the video and took a still photograph from the video. N.T., 3/11/20, at 171-173. Exhibit 4 was identified by Detective Morris as a fair and accurate representation of the still photograph which he took from the surveillance video. *Id.* As for Exhibits 2 and 3, Detective Morris did not know who took

---

[6] Robert Vanmeter, the owner of the Roo Bar, testified that the bar had a video surveillance system in place on July 3, 2019, the day of the incident. N.T., 3/11/20, at 153, 155. He accessed the video on his tablet for the police to review and he emailed the video to the police. *Id.* at 156-157. Exhibit 1-B was identified by Mr. Vanmeter as a portion of the video that came from the bar's surveillance system that he provided to the police. *Id.* at 160.

the photographs or who sent the photographs to the Duquesne police. N.T., 3/10/20, at 110-111.

In light of this testimony, I believe that the Commonwealth properly authenticated Exhibit 2. Although there is a question as to who created the photograph marked as Exhibit 2[7] or how that photograph arrived on his chief's cell phone, Lieutenant Shaw testified that Exhibit 2 was a fair and accurate representation of the photograph that he reviewed on Chief Dunleavy's cell phone and from which he was able to identify Appellant. There are questions as to who took the photograph and how it made its way to Chief Dunleavy's

_____

[7] The Commonwealth argues in its brief that Detective Morris testified that he made the still image reflected in Exhibit 2 from the surveillance video sent by Mr. Vanmeter. Appellee's Brief at 22. Additionally, the trial court stated that Detective Morris testified that Exhibit 2 was made from the video. Trial Court Opinion, 1/20/21, at 13. I disagree. I found no indication in the trial transcript that Detective Morris was ever shown Exhibit 2 and asked whether it was a still photograph that he created from the surveillance video obtained from the Roo Bar. Instead, the testimony establishes that Exhibit 4 – the photograph of two individuals sitting in a vehicle – was the still photograph that Detective Morris created from the surveillance video. Moreover, Detective Joseph Osinski, Detective Morris' office mate, testified that he and Detective Morris saw Exhibits 2 and 3 for the first time on the first day of trial and learned, at that time, that Exhibit 2 was the photograph used by Lieutenant Shaw to identify Appellant. N.T., 3/11/20, at 200-201, 203. Detective Osinski also stated that these photographs were taken from the surveillance video and he believed that someone in the McKeesport Police Department, other than Detective Morris, created these photographs and sent them to Chief Dunleavy of the Duquesne Police Department. *Id.* at 203. According to Detective Osinski, Exhibit 4 was the photograph that Detective Morris created from the surveillance video and provided to McKeesport Police Chief Adam Alfer. *Id.* at 202.

cell phone, however, those gaps go to the weight of the evidence, not its admissibility.[8]

Likewise, Exhibit 4 was properly authenticated. Detective Morris testified that he created a still photograph from the surveillance video that he received from Mr. Vanmeter. He identified Exhibit 4 as a true and accurate representation of the still photograph that he created. Moreover, the chain of custody was properly established with respect to Exhibit 4. Mr. Vanmeter identified the video that he obtained from the bar's surveillance system and, in turn, emailed to Detective Morris. Detective Morris described the way in which he captured the still photograph from the video and he identified Exhibit

---

[8] There is no question that there is conflicting testimony as to which photograph was used by Lieutenant Shaw to identify Appellant. Lieutenant Shaw testified unequivocally that the photograph depicted in Exhibit 2 was the photograph that he saw on Chief Dunleavy's cell phone at which time he identified Appellant. Detectives Morris and Osinski testified that Exhibit 4 is the photograph that Detective Morris created from the surveillance video. Detective Osinski testified Exhibit 4 was the photograph that Detective Morris provided to Chief Alfer. This photograph was presumably forwarded onto Chief Dunleavy of the Duquesne Police Department and was shown to Lieutenant Shaw. Detective Morris never testified as to who created the photographs depicted in Exhibits 2 and 3. In fact, Detective Osinski testified that he and Detective Morris saw Exhibits 2 and 3 for the first time on the first day of trial. Moreover, the affidavit of probable cause prepared by Detective Morris states that Appellant was identified from a photograph of a Black man holding a firearm and shooting in the direction of properties; however, neither Exhibit 2 or 3 depicts an individual holding a firearm. Although the testimony is conflicting, the trier of fact was free to believe one witness over another. As Lieutenant Shaw clearly testified that Exhibit 2 was the photograph that he saw on Chief Dunleavy's cell phone and used to identify Appellant, the trial court was free to credit his testimony.

4 as that still photograph. Thus, the photograph was properly authenticated and the chain of custody was established. The trial court did not err in admitting Exhibit 4.

Turning to Exhibit 3, there is nothing in the record identifying the source of that photograph. Lieutenant Shaw testified that he was shown this photograph at some point in the proceedings and was able to identify the person in that photograph as Appellant. *Id.* at 62. However, there is no testimony as to who created the photograph, how it was created and who showed it to Lieutenant Shaw. Thus, I agree that there is no testimony in the record authenticating this photograph[9] and the record is devoid of any evidence regarding the chain of custody surrounding this exhibit. Accordingly, I agree that the trial court erred in admitting Exhibit 3. However, I find this error to be harmless.

"The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually

---

[9] Again, I note that Detective Osinski testified that he believed Exhibit 3 was created from the surveillance video and that he believed it, along with Exhibit 2, was created by someone in the McKeesport Police Department, other than Detective Morris. But he only had an "opinion" as to who that person was. N.T., 3/11/20, at 203-204. As the trial court did not want Detective Osinski's opinion, he never identified the person or persons he believed created Exhibits 2 and 3. *Id.* at 204.

- 20 -

inevitable presence of immaterial error." ***Commonwealth v. Hamlett***, 234 A.3d 486, 491 (Pa. 2020), *quoting* ***Delaware v. Van Arsdall***, 475 U.S. 673, 681 (1986). "Not all errors at trial . . . entitle an appellant to a new trial, and [t]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial.... Harmless error exists when, *inter alia,* the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence." ***Commonwealth v. Lewis***, 39 A.3d 341, 351 (Pa. Super. 2012) (citation omitted). Moreover, trial court error is harmless and not grounds for reversal where it is clear beyond a reasonable doubt that the error did not contribute to the verdict. ***Commonwealth v. Moran***, 104 A.3d 1136, 1150 (Pa. 2014); ***Commonwealth v. Bullock***, 913 A.2d 207, 218 (Pa. 2006). The only substantive testimony regarding Exhibit 3 was from Lieutenant Shaw. Although he identified Appellant as the person in the photograph marked as Exhibit 3, this testimony was cumulative. Lieutenant Shaw had already testified that Exhibit 2 was a true and accurate representation of the photograph on Chief Dunleavy's cell phone which he was shown and from which he was able to identify Appellant. Hence, Exhibit 2 was the operative photograph that resulted in the identification of Appellant as the perpetrator. Moreover, Lieutenant Shaw identified Appellant as the individual sitting in the passenger seat in the still photograph marked as Exhibit 4. Thus,

even if Exhibit 3 were not admitted, there was sufficient evidence identifying

Appellant as the perpetrator.[10]

In his final issue, Appellant argues that the trial court erred in not

granting a mistrial when the Commonwealth failed to provide the defense with

information until mid-trial regarding the police officers' attempts to interview

Curtis Farrar. Mr. Farrar was struck by one of the bullets that was fired in the

parking lot of the Roo Bar. Appellant argues that, midway through the trial,

during the cross examination of Detective Morris,

> the defense learned that Detective Morris attempted to speak with [Mr.] Farrar in January 2020 when he was at [the Allegheny County Jail ("ACJ")] after having had surgery to remove a bullet piece from his back. [Trial counsel for Appellant] further learned that a report about this matter was written on January 13, 2020, but was not disclosed to the defense. The report was a supplemental narrative that stated that one bullet was removed from [Mr.] Farrar's back. Detective Morris submitted this evidence to his police department, but the police evidence receipt for the recovered bullet also was not disclosed to the defense until midtrial. Detective Morris testified that he was unsure if the bullet was submitted to the crime lab.
>
> The above information was not timely disclosed even though [trial counsel] asked Detective Morris and other police officers a couple of weeks after the surgery to do a photo array with [Mr.] Farrar at ACJ. Detective Morris admitted that, although he remembered [trial counsel] telling him that [Mr.] Farrar was at the ACJ, he did not tell the attorney that he had recently attempted to interview [Mr.] Farrar there.

---

[10] Again, I note that Appellant was in the courtroom and the trial judge, as the factfinder, was able to view him and determine for himself whether Appellant was the individual depicted in the surveillance video from the Roo Bar and the photographs (especially Exhibit 4 which was the still photograph taken from the video).

Appellants Brief at 39-40 (citations to record omitted).  Appellant moved for

a mistrial on the basis that the failure to disclose this information violated

***Brady v.  Maryland***, 373 U.S. 83 (1963).  The trial court denied the motion.

Our standard of review for the denial of a motion for mistrial is as

follows:

> [T]he grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the [finder of fact] from weighing and rendering a true verdict.

***Commonwealth v. Rega,*** 933 A.2d 997, 1016 (Pa. 2007) (citation omitted).

"To establish a ***Brady*** violation, an appellant must prove three elements: [1]

the evidence [at issue] was favorable to the accused, either because it is

exculpatory or because it impeaches; [2] the evidence was suppressed by the

prosecution, either willfully or inadvertently; and [3] prejudice ensued."

***Commonwealth v. Paddy***, 15 A.3d 431, 450 (Pa. 2011).  Moreover,

> [t]he evidence alleged to have been withheld by the prosecution must have been material evidence that deprived the defendant of a fair trial.  Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Id.*** (internal quotes and citations omitted).

The trial court set forth the following basis for the denial of the motion

for mistrial:

- 23 -

Appellant had the burden to demonstrate that this untimely discovered report was exculpatory in some manner to entitle him to relief in the form of a mistrial. The January 13, 2020 supplemental report was a total of seven (7) lines detailing that Detective Morris traveled to the Allegheny County Jail after receiving information from the jail that a bullet fragment had been removed from Curtis Farrar's back. Detective Morris did not have any contact with Mr. Farrar on this date. A property record number for the bullet fragment was listed within the narrative of the report. Through further discussion on the record it became apparent that the fragment, although logged into evidence, was not submitted for forensic examination.

It is indisputable that a discovery violation occurred in this case. However, no interaction between Detective Morris and Mr. Farrar and no connection, forensically or otherwise, was made to the bullet fragment retrieved from the jail to the charges Appellant was on trial for. Trial counsel argued that knowledge of this report may have changed his defense strategy in terms of his presentation and the subpoenaing of witnesses. This generalized argument was not persuasive that an alternative defense strategy or theory would have developed from advanced knowledge of this January 13, 2020 report. The [trial c]ourt did not err in concluding that this was not exculpatory evidence, or that disclosure would have had a reasonable probability of affecting the outcome.

Trial Court Opinion, 1/20/21, at 10 (footnotes omitted). I agree with the trial court's sound assessment and, therefore, conclude that the court did not abuse its discretion in denying Appellant's motion for a mistrial.

For the foregoing reasons, I would affirm.