People v Waggoner (2023 NY Slip Op 04017)

People v Waggoner

2023 NY Slip Op 04017

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, OGDEN, AND GREENWOOD, JJ.

389 KA 19-01868

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DAVID WAGGONER, DEFENDANT-APPELLANT. 

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (JOHN J. MORRISSEY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
PATRICK E. SWANSON, DISTRICT ATTORNEY, MAYVILLE (AMBER L. PAYNE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Chautauqua County Court (David W. Foley, J.), rendered June 10, 2019. The judgment convicted defendant upon a jury verdict of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]). The conviction stems from an incident in which defendant shot and killed the victim following an altercation that occurred outside of defendant's home. We affirm.
Defendant contends that County Court's charge to the jury on the justification defense was insufficient because the jury was not instructed that a justification defense could include a defense of third parties. Defendant did not request that the jury be so charged and did not object to the justification charge as given on that ground. Therefore, defendant's contention is not preserved for our review (see People v Vazquez, 206 AD3d 1621, 1623 [4th Dept 2022], lv denied 39 NY3d 965 [2022]; People v Cruz, 175 AD3d 1060, 1061 [4th Dept 2019], lv denied 34 NY3d 1016 [2019]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant further contends that the court erred in refusing to include an instruction for justification in defense of premises under Penal Law § 35.20 (3). "A trial court must instruct a jury on the defense of justification 'if on any reasonable view of the evidence, the fact finder might have decided that the defendant's actions were justified' " (People v Cox, 92 NY2d 1002, 1004 [1998]). Penal Law
§ 35.20 (3) provides, as relevant here, that "[a] person in possession or control of . . . a dwelling . . . , who reasonably believes that another person is committing or attempting to commit a burglary of such dwelling . . . , may use deadly physical force upon such other person when he . . . reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary." Here, the court did not err in refusing to charge justification under section 35.20 (3) inasmuch as "the evidence does not support defendant's argument that he reasonably believed deadly force was necessary to prevent [the victim] from committing [a burglary]" (Cox, 92 NY2d at 1005). At the time defendant fired the fatal shot, he and the victim were in the street. Defendant had already "terminate[d] the alleged burglary by means not requiring deadly force" (id.). Thus, there is no reasonable view of the evidence under which the jury could have found that defendant's actions were justified to prevent the victim from burglarizing the house (see People v Ali, 89 AD3d 1412, 1413-1414 [4th Dept 2011], lv denied 18 NY3d 881 [2012]; People v Pine, 82 AD3d 1498, 1501 [3d Dept 2011], lv denied 17 NY3d 820 [2011], reconsideration denied 17 NY3d 904 [2011]).
Defendant also contends that the court erred in failing to charge the jury that he had no duty to retreat if he was in his dwelling and was not the initial aggressor (see Penal Law § 35.15 [2] [a] [i]). That contention lacks merit inasmuch as the altercation occurred in the middle of a public street (see People v Aiken, 4 NY3d 324, 329-330 [2005]; People v Daggett, 150 AD3d 1680, 1682 [4th Dept 2017], lv denied 29 NY3d 1125 [2017]; People v Gaines, 229 AD2d 448, 448 [2d Dept 1996], lv denied 88 NY2d 1020 [1996]).
Defendant additionally contends that the court erred in refusing to charge the jury on the lesser included offense of criminally negligent homicide. We reject that contention. A "lesser included offense must be charged only if, under any reasonable view of the evidence as seen in the light most favorable to defendant, the jury could find that defendant committed the lesser offense but not the greater" (People v Randolph, 81 NY2d 868, 869 [1993]). Here, there is no reasonable view of the evidence under which the jury could have determined that defendant "failed to perceive the substantial and unjustifiable risk" that shooting the victim in the head may result in the victim's death (id.; see People v Brown, 269 AD2d 817, 817 [4th Dept 2000], lv denied 95 NY2d 794 [2000]; People v Perkins, 229 AD2d 981, 982 [4th Dept 1996], lv denied 88 NY2d 1023 [1996]).
Defendant further contends that the court erred in refusing to suppress evidence obtained as a result of a showup identification procedure. We reject that contention. Although "[s]howup identifications are disfavored, since they are suggestive by their very nature . . . , prompt showup identifications which are conducted in close geographic and temporal proximity to the crime are not presumptively infirm, and in fact have generally been allowed" (People v Ortiz, 90 NY2d 533, 537 [1997] [internal quotation marks omitted]). Here, the identification occurred approximately 30 minutes after the shooting, at the scene where the shooting took place. Further, although the officer conducting the showup identification procedure asked the identifying witness, "Who is that sitting down over there?," we conclude that suppression was not required. "Inherent in any showup is the likelihood that an identifying witness will realize that the police are displaying a person they suspect of committing the crime, rather than a person selected at random" (People v Gatling, 38 AD3d 239, 240 [1st Dept 2007], lv denied 9 NY3d 865 [2007]), and the mere fact that defendant was sitting on the porch in the presence of one or two officers at the time of the identification did not render it unduly suggestive (see People v Johnson, 198 AD3d 1320, 1321 [4th Dept 2021]; People v Stanley, 108 AD3d 1129, 1130 [4th Dept 2013], lv denied 22 NY3d 959 [2013]). In any event, even assuming, arguendo, that the identification procedure was unduly suggestive, we conclude that any error in admitting the witness's in-court identification of defendant is harmless beyond a reasonable doubt (see People v Burton, 191 AD3d 1311, 1313 [4th Dept 2021], lv denied 36 NY3d 1095 [2021]; People v Parker, 304 AD2d 146, 158 [4th Dept 2003], lv denied 100 NY2d 585 [2003]).
Defendant also contends that the court erred in refusing to suppress statements that he made to the police. Specifically, defendant contends that he was subjected to a custodial interrogation while at the scene and while being transported to the police station for questioning. Defendant further contends that, because his initial statements to the police were obtained in violation of his Miranda rights, his subsequent post-Miranda statements must also be suppressed. We reject those contentions. "In determining whether a defendant was in custody for Miranda purposes, [t]he test is not what the defendant thought, but rather what a reasonable [person], innocent of any crime, would have thought had [they] been in the defendant's position" (People v Figueroa, 156 AD3d 1348, 1348 [4th Dept 2017], lv denied 31 NY3d 1013 [2018] [internal quotation marks omitted]). "When a seizure of a person remains at the stop and frisk inquiry level and does not constitute a restraint on [their] freedom of movement of the degree associated with a formal arrest, Miranda warnings need not be given prior to questioning" (People v Shelton, 111 AD3d 1334, 1336 [4th Dept 2013], lv denied 23 NY3d 1025 [2014] [internal quotation marks omitted]; see People v Bennett, 70 NY2d 891, 893-894 [1987]). "[I]n reviewing the hearing court's finding that there was no custodial interrogation prior to the warnings being administered, and that admissions given were voluntary, great deference must be allowed the trier of fact" (People v Yukl, 25 NY2d 585, 588 [1969], cert denied 400 US 851 [1970]).
Here, defendant was questioned immediately after the incident while he was on the front porch of his home and not physically restrained in any way. "The fact that he might have been restrained, had he attempted to leave, is not controlling" (People v Rodney P. [Anonymous], 21 [*2]NY2d 1, 10 [1967]). Although defendant was questioned about what happened, there was no reason for defendant to believe that the officers knew that he had shot the victim in the head; indeed, there was reason only for defendant to believe at that time that the police knew there was an injured man lying in the street. "Certainly in such circumstances law enforcement authorities would be expected to investigate. That a guilty person may feel—as defendant may have here—threatened or restrained in the presence of police not because of objective police conduct but because of secret guilty knowledge does not render the situation custodial" (People v Johnson, 91 AD2d 327, 330 [4th Dept 1983], affd 61 NY2d 932 [1984]).
Defendant's statements to an officer during transport to the police station were likewise properly admitted against him at trial. "Volunteered statements are admissible provided the defendant spoke with genuine spontaneity and [the statements were] not the result of inducement, provocation, encouragement or acquiescence, no matter how subtly employed" (People v Ibarrondo, 150 AD3d 1644, 1645 [4th Dept 2017]). Here, defendant prompted a conversation with the officer by making spontaneous statements and posing questions to him, and the officer's responses did not induce, provoke, or encourage defendant to make an incriminating statement (see People v Rivers, 56 NY2d 476, 479-480 [1982], rearg denied 57 NY2d 775 [1982]; cf. People v Nichols, 163 AD2d 904, 904 [4th Dept 1990]).
Our determination regarding defendant's pre-Miranda statements "disposes of defendant's further argument that [his] statement[s at the police station were] tainted by the alleged illegality of the . . . initial questioning" (People v Spirles, 136 AD3d 1315, 1316 [4th Dept 2016], lv denied 27 NY3d 1007 [2016], cert denied — US &mdash, 137
S Ct 298 [2016] [internal quotation marks omitted]; see Johnson, 91 AD2d at 331).
We reject defendant's contention that the court erred in admitting in evidence the .22 caliber revolver that police recovered after the shooting. Here, "reasonable assurances established that the gun sought to be admitted was the same weapon as was used in the crime and that it was unchanged, [and] any deficiencies in the chain of custody went only to the weight to be given to the evidence, not the admissibility" (People v Williams, 5 AD3d 705, 706 [2d Dept 2004], lv denied 2 NY3d 809 [2004]; see People v Scott, 189 AD3d 2110, 2112 [4th Dept 2020], lv denied 36 NY3d 1123 [2021]). The People established that the gun that was entered in evidence was the same gun that was recovered near the scene, despite the fact that it was in a changed condition. One officer testified that he had removed what appeared to be a homemade silencer from the weapon in order to safely test-fire it (see People v Grant, 194 AD2d 348, 351 [1st Dept 1993], lv denied 82 NY2d 754 [1993]). Further, the People presented sufficient evidence linking the gun to defendant and to the killing of the victim. Defendant's girlfriend testified that defendant retrieved a gun from their bedroom before going outside to confront the victim and that, shortly after she heard a bang, defendant returned with a gun and told her to "get rid of it."
We reject defendant's contention that the sentence is unduly harsh and severe.
We have considered defendant's remaining contentions and conclude
that none warrants modification or reversal of the judgment.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court