People v Mercer (2023 NY Slip Op 06002)

People v Mercer

2023 NY Slip Op 06002

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

112150
[*1]The People of the State of New York, Respondent,
v
Albert B. Mercer, Appellant.

Calendar Date:October 11, 2023

Before:Clark, J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Kristin A. Bluvas of counsel), for appellant.
Scott G. Walling, Special Prosecutor, Slingerlands, for respondent.

McShan, J.
Appeal from a judgment of the Supreme Court (Richard E. Sise, J.), rendered July 8, 2019 in Saratoga County, upon a verdict convicting defendant of the crimes of manslaughter in the first degree and tampering with physical evidence.
In July 2018, defendant and the victim engaged in an altercation, during which defendant stabbed the victim in the side with a knife and wounded his heart. The victim was rushed to Saratoga Hospital where he was later pronounced dead. Defendant was thereafter charged by a three-count indictment with murder in the second degree (count 1), manslaughter in the first degree (count 2) and tampering with physical evidence (count 3). At the ensuing jury trial, defendant raised a justification defense based upon his use of deadly physical force both in defense of his person and to prevent or terminate a burglary, and Supreme Court charged the jury accordingly. At the culmination of trial, defendant was acquitted on the top charge and found guilty of counts 2 and 3. He was thereafter sentenced to a prison term of 20 years and five years of postrelease supervision on count 2, and a concurrent prison term of 1 to 3 years on count 3. Defendant appeals.
We affirm. Defendant's contentions on appeal directed toward the legal sufficiency of the People's proof are unpreserved on account of his failure to renew his motion for dismissal at the close of his case (see People v Colvin, 218 AD3d 1016, 1017 [3d Dept 2023]).[FN1] Nevertheless, our assessment of defendant's challenge to the weight of the evidence requires that we confirm whether the People proved each element beyond a reasonable doubt, and we do so while considering the evidence in a neutral light with deference to the jury's resolutions on witness credibility (see People v Decker, 218 AD3d 1026, 1029 [3d Dept 2023], lv denied ___ NY3d ___ [Oct. 31, 2023]; People v Lozano, 203 AD3d 1231, 1232 [3d Dept 2022]).
Defendant makes two specific arguments directed at his conviction for manslaughter in the first degree. Specifically, defendant contends that the People failed to establish that he acted with the intent to cause serious physical injury to the victim (see Penal Law § 125.20 [1]). Further, as relevant in this case, defendant contends that the People did not establish his lack of justification for employing deadly force during the altercation (see Penal Law §§ 35.15 [2] [a], [c]; 35.20 [3]). With respect to defendant's use of deadly force to protect his person, the People were required "to demonstrate beyond a reasonable doubt that he did not believe deadly force was necessary or that a reasonable person in the same situation would not have perceived that deadly force was necessary" (People v Wilkins, 216 AD3d 1359, 1361 [3d Dept 2023] [internal quotation marks, ellipsis and citations omitted], lv denied 40 NY3d 1000 [2023]). "However, a person who reasonably believes that another is about to use deadly physical force is not free to reciprocate with deadly physical force if such [*2]person knows that he or she can with complete safety as to himself, herself and others avoid the necessity of so doing by retreating" (People v DeCamp, 211 AD3d 1121, 1122 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1077 [2023]). An individual "is under no duty to retreat if he or she is . . . in his or her dwelling and not the initial aggressor" (Penal Law § 35.15 [2] [a] [i]). Moreover, a person may also utilize deadly force "to prevent or terminate a burglary . . . where 'a person in possession or control of a dwelling reasonably believes that another person is committing or attempting to commit a burglary of such dwelling and he or she reasonably believes such force to be necessary to prevent or terminate the commission or attempted commission of such burglary' " (People v Chappell, 187 AD3d 1319, 1320 [3d Dept 2020] [brackets and ellipses omitted], quoting Penal Law § 35.20 [3]; see People v Simmons, 111 AD3d 975, 978 [3d Dept 2013], lv denied 22 NY3d 1203 [2014]).
At trial, the People elicited testimony establishing that, on the evening preceding the altercation, defendant was in his mobile home where he resided with his wife at the time. Various witnesses testified that, after consuming alcohol and smoking marihuana on a bench near defendant's residence, the victim, defendant's wife and a few other individuals attempted to enter the residence to continue their activities. Upon arriving, those individuals discovered that defendant had barricaded the door with a chair, and as they attempted to make their way through the doorway, defendant approached and forcefully demanded that they leave. Further, several witnesses recounted that defendant made various threats toward the victim during this interaction, which culminated in defendant shoving his wife out of the door. The wife testified that she returned to the home the following morning and encountered defendant in an agitated state, pacing around and making "snide comments" to her. The testimony of the wife and the victim's girlfriend recounted that, at around 12:30 p.m., the victim returned to defendant's home to recover a hat that he had left behind the day before. According to the wife, she let the victim in the house, at which point he and defendant immediately started arguing. The wife testified that defendant then demanded that the two "take this outside." The victim's girlfriend testified that she observed the victim walk down the stairs of the porch onto a stoop between the stairs and a garbage can, bang on the side of the residence and yell "you're still talking s**t," and "[y]ou can bring this outside." According to the girlfriend, defendant then emerged from the home brandishing a knife and waiving it at the victim. After a brief verbal exchange between defendant and the victim, the two started exchanging blows at the bottom of the stairs until defendant eventually stabbed the victim in the side. The victim then staggered into his girlfriend's [*3]vehicle and she drove him to Saratoga Hospital, where he succumbed to his injury.
For his part, defendant testified that the victim had threatened him on the evening preceding the altercation and that he was generally afraid of the victim. Specifically, defendant provided a different account of the encounter with his wife and the victim the night before the altercation, explaining that the victim threatened to kill him after he demanded that they leave his home. Defendant, who testified that he recalled the victim routinely carrying a knife, explained that the victim's threat prompted him to retrieve his own knife from his bedroom and place it under his couch, where he attempted to sleep that evening. Further, according to defendant's account of the altercation, shortly after his wife returned the following morning, the victim arrived at the door shirtless and "foaming from the mouth," at which point he forced his way into defendant's home and physically assaulted defendant. Defendant averred that the victim was striking him around the head and midsection, exclaiming "Now I'm going to kill you," before running outside. Defendant was on the floor near the couch at this point, when he grabbed the knife and determined that he "had to find [the victim]" so that he "couldn't . . . come back in." Defendant explained that he could not just shut the door to the mobile home because the door was not working properly and would not hold the victim. According to defendant, after several minutes passed, he followed the victim outside and, when he reached the area outside his doorway, the victim charged at him from the end of the walkway, prompting defendant to brandish the knife and shout warnings to the victim to stop. Defendant testified that the two then exchanged blows and, during the melee, after the victim first struck him with a closed fist, he responded by stabbing the victim, causing him to retreat down the stairs and leave with the girlfriend.
We initially conclude that a different verdict would not be unreasonable in the event that the jury credited defendant's account of the altercation and his representation that he harbored a legitimate fear of the victim (see People v Scott, 219 AD3d 1572, 1575 [3d Dept 2023]; People v Barzee, 190 AD3d 1016, 1019 [3d Dept 2021], lv denied 36 NY3d 1094 [2021]). Nevertheless, considering the sum of evidence viewed in a neutral light with deference to the jury's resolutions of credibility, we find that defendant's conviction for manslaughter is not against the weight of the evidence. Defendant's contention that the evidence fails to establish that he intended to cause serious injury is belied by the general circumstances surrounding his actions (see People v Brown, 100 AD3d 1035, 1037 [3d Dept 2012], lv denied 20 NY3d 1009 [2013]; see also People v Vanderhorst, 117 AD3d 1197, 1200 [3d Dept 2014], lv denied 24 NY3d 1089 [2014]). To this end, there is no dispute that defendant inflicted the stab wound to the victim and[*4], based upon the severity of the wound, among other things, the jury could fairly infer that defendant understood the natural and probable consequences of his conduct, which established the requisite intent (see People v Steinberg, 79 NY2d 673, 682-683 [1992]; People v Crocker, 186 AD3d 500, 501 [2d Dept 2020], lv denied 35 NY3d 1112 [2020]; People v Watson, 174 AD3d 1138, 1140 [3d Dept 2019], lv denied 34 NY3d 955 [2019]; People v Simpson, 173 AD3d 1617, 1618 [4th Dept 2019], lv denied 34 NY3d 954 [2019]; People v Karuzas, 124 AD3d 927, 928 [3d Dept 2015]; People v Hartman, 64 AD3d 1002, 1003 [3d Dept 2009], lv denied 13 NY3d 860 [2009]).
As to his justification defense, defendant's contention that the entirety of proof established that the altercation took place within an area encompassed as his dwelling and obviated his duty to retreat is without merit. There was sufficient evidence marshalled at trial establishing that the altercation, and resulting knife wound, occurred at the bottom of the stairs and in an area that did not negate defendant's duty to retreat (see People v Wimberly, 19 AD3d 518, 519 [2d Dept 2005], lv denied 5 NY3d 811 [2005]). Moreover, even if we adopted defendant's account of the altercation and determined that he stabbed the victim while standing directly outside of the entrance to his mobile home, the photographs admitted at trial depict a small area at the top of a set of stairs leading up to the front door rather than an extension of the dwelling (see People v Aiken, 4 NY3d 324, 330 & n 4 [2005]; see also People v Bennett, 212 AD2d 1028, 1028 [4th Dept 1995], lv denied 85 NY2d 936 [1995]; cf. People v McCurdy, 86 AD2d 493, 497-498 [2d Dept 1982]). To the extent that defendant relies on testimony suggesting that the locking mechanism on the door was insufficient to ensure that he could safely exclude the victim from the mobile home, we note that defendant's own account of the altercation established that the victim voluntarily exited the premises and had reached the end of the walkway in front of the home when defendant pursued him outside with a knife in hand (see Penal Law § 35.15 [2] [a] [i]). Accordingly, there was sufficient evidence permitting the jury to determine that defendant's actions in defense of his person were not justified, and we find no reason to disturb that determination (see People v Fuentes, 185 AD3d 960, 960 [2d Dept 2020]; People v Leon, 163 AD2d 740, 742 [3d Dept 1990], lv denied 77 NY2d 879 [1991]). Similarly, these facts were sufficient for the jury to reject defendant's defense that he was justified in utilizing deadly force to prevent or terminate a burglary (see People v Waggoner, 218 AD3d 1221, 1222 [4th Dept 2023]; see also People v Cox, 92 NY2d 1002, 1005 [1998]).
Defendant also contends that there was insufficient evidence corroborating his wife's account of his post-altercation conduct, rendering the evidence insufficient to support his conviction for tampering with evidence (see CPL [*5]60.22 [1]). We are unpersuaded. While defendant asserts that there was no evidence elicited at trial that he directed his wife to hose off the victim's blood, corroboration for purposes of accomplice testimony need not establish the elements of the offense (see People v Breland, 83 NY2d 286, 292 [1994]; People v Lawrence, 141 AD3d 828, 832 [3d Dept 2016], lv denied 28 NY3d 1073 [2016]). To the contrary, the requirement for corroborative evidence must only "connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" and "[s]eemingly insignificant matters may harmonize with the accomplice's narrative so as to provide the necessary corroboration" (People v Jones, 215 AD3d 1123, 1128-1129 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 935 [2023]; see People v Ashe, 208 AD3d 1500, 1502 [3d Dept 2022], lv denied 39 NY3d 961 [2022]). Defendant testified that he first encountered his wife outside of the home with a hose in her hand, at which point he turned on the water to aid his wife in washing away the victim's blood. Further, several witnesses observed a wet spot in the location of the altercation despite the lack of any rainfall in the hours preceding the investigation. We find that this evidence sufficiently established defendant's involvement in the criminal conduct, thus meeting the low threshold for corroboration (see People v Almond, 208 AD3d 1614, 1615 [4th Dept 2022]; People v Chapman, 182 AD3d 862, 865 [3d Dept 2020]; People v Burns, 68 AD3d 1246, 1248 [3d Dept 2009], lv denied 14 NY3d 798 [2010]). In turn, there is no justification to disturb the resolution of the jury as to which account to credit (see People v Jones, 215 AD3d at 1130-1131; People v Kerrick, 206 AD3d 1268, 1270 [3d Dept 2022], lv denied 38 NY3d 1151 [2022]).
Finally, we reject defendant's contention that his sentence is unduly harsh and excessive considering the factors he advances in mitigation. Defendant's age, military service and criminal record do not outweigh the consequences of the significant criminal conduct of which he was convicted (see People v Franklin, 216 AD3d 1304, 1313 [3d Dept 2023], lv denied 40 NY3d 934 [2023]; People v Harris, 203 AD3d 1320, 1320 [3d Dept 2022], lv denied 38 NY3d 1033 [2022]). Accordingly, we discern no compelling justification for granting defendant's request to modify his sentence in the interest of justice (see CPL 470.15 [6] [b]). Defendant's remaining contentions have been considered and found lacking in merit.
Clark, J.P., Aarons, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant contends that he was deprived of the effective assistance of counsel based solely upon counsel's failure to renew his trial motion to dismiss at the close of all proof. This deficiency alone does not establish that counsel was ineffective (see People v Smith, 193 AD3d 1260, 1268 [3d Dept 2021], lv denied 37 NY3d 968 [2021]), and our review of the record satisfies us that counsel's efforts, which notably resulted in an acquittal of the top count charging murder in the second degree, were more than sufficient to establish that defendant received meaningful representation (see People v Wilkins, 216 AD3d 1359, 1364-1365 [3d Dept 2023], lv denied 40 NY3d 1000 [2023]; People v Calafell, 211 AD3d 1114, 1120-1121 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]).