The People of the State of New York, Respondent, *v.* Harry A. Rudelt, Appellant.

Third Department, December 2, 1958.

*Hyman C. Levine* for appellant.

*Benjamin Newberg, District Attorney,* for respondent.

Bergan, J. Appellant has been convicted of robbery in the first degree within the definition of subdivision 3 of section 2124 of the Penal Law, " Being aided by the use of an automobile ". Two questions become important on appeal: whether the record

would sustain a finding of the creation of fear as a means by which appellant was able to take and retain the property in question; and whether it would sustain a finding that the robbery was committed " aided by the use of " an automobile.

Appellant was employed as a chauffeur by a 69-year-old woman who operated a hotel in the Town of Thompson, Sullivan County. On August 6, 1956 defendant drove his employer in her station wagon to a bank in Monticello, where she obtained about $13,000 in cash in bags to use for her payroll. At her request defendant placed the money on the front seat of the car where, as they drove from the bank, it rested between defendant and his employer.

On the way back to the hotel the defendant turned the car off into an isolated road and then into a field where he stopped. The complaining witness testified that when he brought the car to a stop he said to her " I must have that money. I could kill you or I should kill you but I won't ". The witness pleaded with him not to kill her; defendant took the money and threw it out the window on his side of the car; got out himself, taped the door on the complaining witness' side, and went away.

Defendant was sworn as a witness and although he admitted a larceny, contended there was no robbery. His testimony does not differ materially from the narrative of the complaining witness; he testified he threw the money out of the car before he stopped; he denied the threats, but admitted that the complaining witness pleaded with him not to kill her; he admitted he taped the door on her side; that he had planned to drive into the isolated place and to take the money and had previously parked another automobile near the scene of the crime to aid his escape. We are of opinion that robbery in the first degree is sufficiently established in the record and that the judgment must stand.

If the jury found that defendant stopped the car, made the threat to kill complainant and then took the money and threw it out the window, findings which would be quite consistent with complaining witness' testimony, robbery would clearly be made out within section 2120 of the Penal Law for there would be an " unlawful taking " of personal property " in the presence of " another against his will " by means of  *  *  *  fear of injury  *  *  *  to his person ".

The statement about his ability to kill a 69-year-old woman on an isolated road, even with the words in context " but I won't ", could readily be construed by the jury to have accomplished the creation of fear of immediate injury to effect the taking of the money against the will of the complainant; and

this would be a robbery within the classic as well as the statutory definition.

But even if the money had been thrown out the window before the threat was made, a robbery would nevertheless be made out because the fear could then have been held by the jury to have been created to "retain possession of" the property and this, within the further statutory definition (Penal Law, § 2121), constitutes robbery quite as much as the use of fear "to obtain" it.

Indeed, if the defendant's testimony be accepted fully, and it be determined that there was no threat in the words, the jury might find that the driving to the isolated place and the taping of the door of complainant's car after defendant had thrown the money out and had himself gotten out, were not merely means of aiding escape but acts of force or acts to create fear, or both, in aid of the retention of the stolen money, because if the victim were not under the influence of fear because of the sinister isolation of the place and were fully free to get out of her car, she might reasonably be expected to contest the retention of her property by the defendant.

A good illustration of the application of this principle appears in *People* v. *Glynn* (54 Hun 332, affd. 123 N. Y. 631 [1889]). There some thieves had taken property at night from a ship standing at dock, and gotten the property into a rowboat alongside. The ship's captain had heard a noise and, after the property had been placed in the rowboat, came on deck where he was threatened by one of the thieves who, pointing a gun, said he would shoot him.

VAN BRUNT, P. J., noted (p. 334) "that, although the thief may have procured possession of the property  *  *  * without force or violence, the removal of the property from the presence of that other, with force or violence constitutes robbery."

The general rule, consistent with the New York Penal Law, is that although the use of force to effect an escape does not constitute robbery, force to retain possession of stolen property makes out a robbery. (77 C. J. S., Robbery, § 11, p. 457.) Besides this, the jury could well have found that the testimony of the complaining witness was true and that the threat was made to accomplish the actual taking of the property from complainant's possession.

The other main point made by appellant is that the robbery was not in the first degree because it has not been established that the crime was by a person "aided by the use of an auto-

mobile " (Penal Law, § 2124, subd. 3). The automobile which is important is not the one which defendant parked near the scene of the crime to effect his escape; it is the automobile in which defendant drove the complaining witness to the scene of the crime. The use of this automobile was an essential ingredient of the plan and its accomplishment.

From the time defendant turned the vehicle away from the road to the hotel and, in control of it, drove the complainant, the money, and himself into an isolated place, the use of the vehicle was the main instrument in the commission of the crime, because it was necessary to get the complainant and the money away from a populated area where an outcry could prevent the taking, or prevent the retention, of the money by defendant.

His control of the station wagon made the accomplishment of the crime possible. At the very minimum its " use " must be deemed as having " aided " him in the crime itself and by his own testimony the statutory test may be deemed to have been met. The other points raised by appellant do not raise substantial questions.

The judgment of conviction should be affirmed.

FOSTER, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Judgment of conviction affirmed.