People v Reinfurt (2025 NY Slip Op 04603)

People v Reinfurt

2025 NY Slip Op 04603

Decided on August 7, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 7, 2025

CR-24-0663
[*1]The People of the State of New York, Respondent,
v
Demar Reinfurt, Appellant.

Calendar Date:April 30, 2025

Before:Pritzker, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Steven M. Sharp, Albany, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.

Powers, J.
Appeal from a judgment of the Supreme Court (Frank Milano, J.), rendered September 7, 2023 in Schenectady County, upon a verdict convicting defendant of the crimes of unlawful imprisonment in the second degree, assault in the first degree, attempted assault in the first degree, unlawful imprisonment in the first degree and criminal possession of a weapon in the third degree.
In September 2020, defendant was charged in a multicount indictment with kidnapping in the second degree (count 1) (see Penal Law § 135.20), two counts of assault in the first degree (counts 2 and 3) (see Penal Law § 120.10 [1], [4]), unlawful imprisonment in the first degree (count 4) (see Penal Law § 135.10) and criminal possession of a weapon in the third degree (count 5) (see Penal Law § 265.02 [1]). These charges stemmed from allegations that defendant had struck the victim in the head with a hammer while he held her in his apartment and would not allow her to leave. Following a jury trial — during which, most notably, prospective jurors were referred to by their assigned juror numbers and defendant raised a justification defense — defendant was convicted of the lesser included offense of unlawful imprisonment in the second degree under count 1 (see Penal Law § 135.05), convicted of count 2 as charged, convicted of the lesser included offense of attempted assault in the first degree under count 3 (see Penal Law § 110.00) and convicted of counts 4 and 5 as charged. Defendant was then sentenced, as a second felony offender, to a prison term of 22 years, to be followed by five years of postrelease supervision, on his conviction of assault in the first degree and to lesser concurrent terms of incarceration on the remaining convictions. Defendant appeals.
Initially, defendant correctly contends — and the People concede — that his conviction of unlawful imprisonment in the second degree must be dismissed and his associated sentence vacated. This conviction is a lesser included offense of his conviction of unlawful imprisonment in the first degree (see People v Barber, 155 AD3d 1543, 1546 [4th Dept 2017]; People v Subik, 112 AD2d 480, 481 [3d Dept 1985]; see also People v Rosario, 157 AD3d 988, 994 [3d Dept 2018], lv denied 31 NY3d 1121 [2018]).
We likewise agree with defendant that his conviction of attempted assault in the first degree pursuant to Penal Law § 120.10 (4) cannot stand.[FN1] Relevant to that conviction, "[a] person is guilty of assault in the first degree when . . . [i]n the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he [or she], or another participant if there be any, causes serious physical injury to a person other than one of the participants" (Penal Law § 120.10 [4]). Correspondingly, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). "[W]here a [*2]penal statute imposes strict liability for creating an unintended result, an attempt to commit that crime is not a legally cognizable offense" (People v Prescott, 95 NY2d 655, 659 [2001]). Thus, as "felony assault punishes a felon for the actual consequences of his or her actions," there can be no attempt to commit the crime as outlined in that subdivision (People v McCann, 126 AD3d 1031, 1034 [3d Dept 2015], lv denied 25 NY3d 1167 [2015]; see People v Miller, 87 NY2d 211, 218 [1995]; People v Coleman, 74 NY2d 381, 384-385 [1989]; People v Campbell, 72 NY2d 602, 605 [1988]; see also Matter of Maldonado, 131 AD2d 367, 367 [1st Dept 1987], lv denied 70 NY2d 608 [1987]). Defendant's conviction for attempted assault in the first degree must therefore be reversed and his attendant sentence vacated.
Defendant argues that his convictions are both legally insufficient and against the weight of the evidence. As a result of his generalized motion for a trial order of dismissal, defendant's challenge to the legal sufficiency of the evidence is largely unpreserved. Defendant specifically alleged that the People did not satisfy their prima facie burden of demonstrating, as to the count charging assault in the first degree, that the injury the victim sustained could lead to death and, as to the count charging criminal possession of a weapon, that defendant had possessed a weapon with intent to use it unlawfully (see People v Rock, 231 AD3d 1315, 1315 [3d Dept 2024]; People v Baber, 182 AD3d 794, 795 [3d Dept 2020], lv denied 35 NY3d 1064 [2020]). As a result, defendant's legal sufficiency argument is preserved only to this limited extent.
In determining whether defendant's convictions are supported by legally sufficient evidence, "we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Harris, 203 AD3d 1320, 1321 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1033 [2022]). Nevertheless, "a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Slocum, 178 AD3d 1131, 1132 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 35 NY3d 944 [2020]). "In assessing whether a verdict is supported by the weight of the evidence, this Court must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Henley, 232 AD3d 1117, 1118 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 43 NY3d 930 [2025]; see People v Danielson, 9 NY3d 342, 349 [2007]).
To be found guilty of assault in the first degree, it must be demonstrated that, "[w]ith intent to cause serious physical injury to another person, [the defendant] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). "A person is guilty of unlawful imprisonment in the first degree when he [or she] restrains another person under circumstances which expose the latter to a risk of serious physical injury" (Penal Law § 135.10). Relevant to these crimes, serious physical injury is defined as a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). Finally, a person who has previously been convicted of any crime is guilty of criminal possession of a weapon in the third degree when he or she commits criminal possession of a weapon in the fourth degree (see Penal Law § 265.02 [1]). Relevant thereto, "[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses any . . . dangerous or deadly instrument or weapon with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]; see Penal Law § 10.00 [12], [13]).
The victim testified that she and Dana Goossens, whom she had met the week prior, went to defendant's home in the City of Schenectady on the evening of March 27, 2020. The victim was unable to testify in certain terms as to a timeline of the events on the night in question. However, a 911 dispatcher testified that two emergency calls were received from the victim's cell phone — the first at 11:38 p.m. on March 27 and the second at 2:15 a.m. on March 28 — and the victim was able to connect the events temporally to these calls. The victim described that Goossens left the residence shortly after arrival, defendant then locked the door, and the victim was at the residence alone with defendant for a period of hours. During this time, defendant made sexual advances and grew angry when she did not reciprocate. He did not allow the victim to leave, despite requests and attempts to do so, resulting in her discreetly dialing 911 the first time. Shortly after she placed the call, defendant struck her in the head and hands with a hammer, rendering her unconscious for an unknown length of time. The victim awoke to defendant kicking her and yelling at her. Defendant additionally stated that he was going to kill the victim during the incident. The victim again tried to leave the residence, but defendant would not allow this. She was eventually able to go into the bathroom and attempt to make a second discreet call to 911.[FN2] However, during this call, she accidentally put the phone on speaker, which defendant overheard; he then came into the bathroom brandishing a knife. Law enforcement arrived soon after and the victim was able [*3]to leave the residence and be brought to the hospital, where she received brain surgery, among other treatment.[FN3]
Countering the victim's testimony, defendant testified that the victim and Goossens arrived at his home at approximately 2:00 p.m. on the day in question, however Goossens departed after a time and he and the victim were alone. According to defendant, he and the victim engaged in certain sexual acts. He then left the residence after she declined to have sexual intercourse and she awaited his return on the porch outside the residence. They reentered the home when defendant returned. He later observed the victim in his music studio, and she attempted to run out the door. Defendant noticed that he was missing approximately $500 in cash that he had stored in his studio. The victim denied having taken the money and turned her pockets out and told defendant to search her. Defendant responded that he would let the victim out if she gave him the money back and the victim threatened to call the police. This went on for a period of hours. The victim then picked up a two-by-four board, which she held for what he opined to be approximately 30 minutes as they continued to argue. Subsequently, the victim was holding this board when she charged him with it and, as a result, he hit her with a hammer two to three times. The strike caused the victim to fall to the ground and drop the board. Although defendant admitted to striking the victim as she was falling, he denied having struck the victim while she was on the ground. The altercation then came to an end and, at some point thereafter, law enforcement arrived.
As to the assault and unlawful imprisonment counts, viewed in the light most favorable to the People, we find the proof presented to be legally sufficient to find that the victim sustained serious physical injuries (see People v Ackerman, 173 AD3d 1346, 1349 [3d Dept 2019], lv denied 34 NY3d 949 [2019]). Most notably, the victim's treating physician testified that the injuries she had sustained would have been fatal without medical intervention and, in any event, the Penal Law does not define serious physical injury in the limited manner defendant advanced at trial (see Penal Law § 10.00 [10]). Likewise viewed in the light most favorable to the People, we also find the proof to be legally sufficient to infer from the circumstances that defendant had possessed a dangerous weapon — the hammer — with the intent to use it unlawfully, thereby supporting the verdict on the weapons count (see People v Purvis, 90 AD3d 1339, 1340 [3d Dept 2011], lv denied 18 NY3d 997 [2012]; see generally People v Brooks, 233 AD3d 1358, 1359 [3d Dept 2024]).
We similarly find defendant's challenge to the weight of the evidence meritless. A different verdict would not have been unreasonable had the jury credited defendant's description of the events on the night in question, specifically in relation to his account of the altercation with the victim and credited his justification [*4]defense. However, viewing the evidence in a neutral light and deferring to the credibility determinations made by the jury, we find defendant's remaining convictions are not against the weight of the evidence. Defendant does not dispute that, having been previously convicted of a crime, he utilized a hammer to inflict wounds upon the victim nor does he contest that he did not allow her to leave his residence. Instead, his testimony described that he had done so because, relative to the assault and weapons convictions, the victim charged him while armed with a two-by-four and, relative to the unlawful imprisonment conviction, that he suspected she had stolen from him. However, it was the jury's prerogative to discredit this testimony and, instead, credit the victim's recitation of the events. As such, we find defendant's convictions are not against the weight of the evidence (see People v Banks, 227 AD3d 1225, 1226 [3d Dept 2024], lv denied 42 NY3d 937 [2024]; People v Rosario, 157 AD3d at 990; People v Taylor, 118 AD3d 1044, 1047 [3d Dept 2014], lv denied 23 NY3d 1043 [2014]).[FN4]
As defendant acknowledges, his assertion that Supreme Court improperly empaneled an anonymous jury is unpreserved for our review.[FN5] Prior to the start of jury selection, the court stated on the record that "to avoid confusion" it would refer to prospective jurors by utilizing each individual's assigned juror number. The court admitted a complete list of the prospective jurors' names and assigned juror numbers as an exhibit and then asked whether either party had an objection to this process, to which the People and defendant indicated they had no objection. Subsequently, during voir dire a prospective juror stated his name on the record and, albeit only using his first name, there was no indication made to the prospective jurors by the court or either counsel that this was improper. Based upon these facts, we decline defendant's request to take corrective action in the interest of justice (see CPL 470.15 [3] [c]; People v Breedlove, 223 AD3d 939, 941 [3d Dept 2024], lv denied 41 NY3d 964 [2024]).
Defendant next alleges that Supreme Court erred in failing to dismiss two prospective jurors — Nos. 169 and 276 — who had, according to him, demonstrated an inability to be impartial. On the contrary, both individuals' responses evidenced confusion with the hypothetical posed that was remedied by further clarification from the court and not, as defendant claims, "a serious doubt as to [either's] ability to be impartial or [an] indicat[ation] that [they] had already formed an opinion as to defendant's guilt or innocence" (People v Rosa, 206 AD3d 1253, 1257 [3d Dept 2022], lv denied 39 NY3d 964 [2022]). Thus, we do not find denial of the challenges to have been in error (see People v Thorpe, 141 AD3d 927, 933 [3d Dept 2016], lv denied 28 NY3d 1031 [2016]).
In response to defendant's inquiry as to whether the victim had reported defendant's sexual advances to law enforcement on the [*5]night in question, the People introduced excerpts of the victim's grand jury testimony. Defendant claims this to have been an error depriving him of a fair trial. "A witness's trial testimony ordinarily may not be bolstered with pretrial statements. Prior consistent statements, however, may be used to rebut a claim of recent fabrication to the extent that such a statement predated the motive to falsify" (People v Johnson, 176 AD3d 1392, 1395 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 1129 [2020]; see People v Gross, 26 NY3d 689, 694 [2016]). This is because "otherwise inadmissible evidence may become admissible where the adverse party has opened the door to it by offering evidence, or making an argument based on the evidence, which might otherwise mislead the factfinder" (People v Rosario, 17 NY3d 501, 513 [2011] [internal quotation marks and citation omitted]). "[P]rior consistent statements are notably less prejudicial to the opposing party than other forms of hearsay, since by definition the maker of the statement has said the same thing in court as out of it, and so credibility can be tested through cross-examination" (People v Ludwig, 24 NY3d 221, 230 [2014]; accord People v Feliciano, 212 AD3d 474, 475 [1st Dept 2023], lv denied 40 NY3d 928 [2023]; see also People v Moore, 223 AD3d 1085, 1094 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]).
During her testimony, the victim confirmed that she was on probation at the time of the incident, and defendant then questioned her as to whether she reported defendant's sexual advances to law enforcement that night. The victim conceded that she did not do so, stating that she was concerned with her injuries and seeking medical treatment, and, for this reason, she did not detail everything that had occurred. In response, the People introduced the victim's grand jury testimony, over defendant's objection, during which she explained defendant's sexual advances. Upon recross, the victim affirmed that she did not make these allegations on the record until the grand jury presentment, four months after the incident. Defendant then attempted to assail the victim's credibility multiple times in closing — with counsel first stating that defendant reported to law enforcement that night that the victim had attempted to rob him and "didn't change his story," seemingly to draw a distinction from the victim's failure to notify law enforcement of defendant's sexual advances at that time. Counsel continued that the victim "is being untruthful with just about everything," that the only element of her recitation of the events that is truthful is that she was hit with a hammer and that she only provided details that cast defendant in a negative light. Finally, counsel opined that the reason for the victim's delay in reporting was because "she [was] trying to fit her narrative to this police investigation."
The People contend that the purpose of defendant's initial line of [*6]questioning was to suggest that the victim was making these allegations for the first time at trial, thereby misleading the jury in this regard, and opening the door to the introduction of a prior consistent statement for the purpose of rehabilitating the victim's credibility (see People v Hamilton, 176 AD3d 1505, 1508 [3d Dept 2019], lv denied 34 NY3d 1128 [2020]; People v Callicut, 101 AD3d 1256, 1262-1263 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]). However, the People have failed to identify that the victim's grand jury testimony predated any supposed motive to falsify and, therefore, the introduction of this prior testimony to rehabilitate her credibility was improper as it did not predate her motive to fabricate (see People v McClean, 69 NY2d 426, 428 [1987]; People v Cooper, ___ AD3d ___, ___, 2025 NY Slip Op 03816, *2 [2d Dept 2025]). Nevertheless, we find this error to have been harmless (see People v Johnson, 176 AD3d at 1396; see also People v Crudup, 197 AD3d 656, 658-659 [2d Dept 2021], lv denied 37 NY3d 1160 [2022]; People v Hamilton, 176 AD3d at 1508). This proof went to the tangential issue of whether defendant made sexual advances toward the victim, yet defendant conceded at trial that he and the victim had engaged in certain sexual acts. What is more, the victim explained that she did not initially provide a full and detailed recitation of what had occurred to law enforcement because she was being interviewed in the hospital while she was in serious need of medical treatment but prior to being brought into surgery.
Defendant presents a twofold challenge to Supreme Court's justification charge. First, that the court wrongly denied his request to charge the jury as to use of deadly force in defense of a robbery, and second, that the court improperly granted the People's request to charge the jury that each hammer strike was required to be justified.
The use of deadly physical force is justified when, relevant to defendant's request, a defendant "reasonably believes" that another "person is committing or attempting to commit a . . . robbery" (Penal Law § 35.15 [2] [b]) or, relevant to the People's request, he or she "reasonably believes" that another "person is using or about to use deadly physical force" (Penal Law § 35.15 [2] [a]).[FN6] A justification charge "is appropriate where, viewing the evidence in the light most favorable to the defendant, a jury, based upon any reasonable view of the evidence, could decide that the defendant's actions were justified" (People v Hartman, 86 AD3d 711, 712 [3d Dept 2011] [internal quotation marks and citation omitted], lv denied 18 NY3d 859 [2011]).
Defendant testified that he believed the victim had stolen money from him and, therefore, he told her that if she returned the money, he would unlock the gate blocking her exit and allow her to leave. He opined that this dialogue lasted for a period of hours before she picked up the board and, in turn, he picked up the hammer. Defendant described [*7]that they both held onto their respective weapons until she "started to attack" him with the board, at which point he "hit her with the hammer two to three times."
Based upon defendant's own testimony, he struck the victim with the hammer hours after his belief that she had stolen from him had arisen. Due to this protracted delay, we cannot say there is a reasonable view of the evidence to support that the victim "forcibly retain[ed] the proceeds of a larceny immediately after the taking" so as to justify defendant's use of deadly physical force to prevent the commission of a robbery (People v McTiernan, 176 AD3d 484, 485 [1st Dept 2019], lv denied 34 NY3d 1161 [2020]; see Penal Law § 35.15 [2] [b]; People v Patterson, 176 AD3d 1637, 1639 [4th Dept 2019], lv denied 34 NY3d 1080 [2019]; People v Sadler, 153 AD3d 1285, 1286 [2d Dept 2017], lv denied 30 NY3d 1022 [2017]; see also Penal Law § 160.00; People v Robertson, 53 AD3d 791, 793 [3d Dept 2008], lv denied 11 NY3d 857 [2008]). Therefore, Supreme Court appropriately denied defendant's request for a charge as to justified use of force against a robbery. Finally, as to defendant's second point of contention, "a defendant who may be justified in using deadly physical force at the start of an encounter loses the right to use such force at the point he [or she] can no longer reasonably believe the assailant still poses a threat to him [or her]" (People v Castillo, 42 NY3d 628, 631 [2024] [internal quotation marks and citations omitted]; accord People v Marin, ___ AD3d ___, ___, 2025 NY Slip Op 03357, *3 [3d Dept 2025]) and, therefore, the court did not err in charging the jury accordingly (see generally People v Ball, 154 AD3d 1060, 1061 [3d Dept 2017]).
Defendant's claim of ineffective assistance of counsel is similarly unavailing. "A claim of ineffective assistance of counsel must be supported with proof that the attorney failed to provide meaningful representation and that there were no strategic or other legitimate explanations for counsel's allegedly deficient conduct" (People v Hoyt, 237 AD3d 1360, 1362 [3d Dept 2025] [internal quotation marks and citations omitted]). In this respect, it is well settled that "the Constitution guarantees a defendant a fair trial, not a perfect one" (People v Burtner, 236 AD3d 1145, 1147 [3d Dept 2025] [internal quotation marks and citations omitted]).
We find each allegation of ineffectiveness raised by defendant to be without merit. Initially, defendant failed to demonstrate that counsel's choice in not peremptorily challenging a juror was without strategic explanation after a for-cause challenge to that juror had been denied (see People v Hooper, 238 AD3d 1207, 1211 [3d Dept 2025]). As to the other juror with whom defendant now takes issue, a for-cause challenge would have had little to no chance of success as this individual affirmed on the record that if defendant elected not to testify he would not use defendant's failure to do so against him (see People [*8]v Franklin, 216 AD3d 1304, 1313 [3d Dept 2023], lv denied 40 NY3d 934 [2023]). Defendant has also failed to demonstrate the absence of a strategic explanation for counsel's failure to object to certain questioning or request limiting instructions for the resulting testimony and, furthermore, it is possible that counsel elected not to do so in an attempt to not draw attention to this unfavorable proof (see People v Moore, 223 AD3d 1085, 1098 [3d Dept 2024], lv denied 41 NY3d 1003 [2024]). Finally, to the extent defendant now faults counsel for not advancing a merger argument as to the counts charging kidnapping in the second degree and unlawful imprisonment in the first degree, such a motion would have also had little to no chance of success (see generally People v White, 231 AD3d 1429, 1433 [3d Dept 2024], lv denied 42 NY3d 1082 [2025]). Counsel here, among other things, presented cogent opening and closing statements, effectively questioned prospective jurors during voir dire and challenged those believed to be disadvantageous to defendant, cross-examined witnesses, lodged successful objections to evidence and gainfully requested charges on lesser included offenses. Thus, viewed in totality and at the time of representation, we find that defendant was provided meaningful representation (see People v Powell, 236 AD3d 1239, 1242 [3d Dept 2025]; compare People v Monk, 237 AD3d 1250, 1256 [3d Dept 2025]).
Defendant claims that he was improperly adjudged as a second felony offender because, at the time of sentencing, the predicate Florida offense was not a felony under New York law. Contrary to the People's assertion, defendant was not required to preserve his challenge to the adequacy of his predicate offense (see People v Sumter, 157 AD3d 1125, 1126 [3d Dept 2018]).
"A second felony offender is a person, other than a second violent felony offender as defined in [Penal Law §] 70.04, who stands convicted of a felony . . . after having previously been subjected to one or more predicate felony convictions as defined in [Penal Law § 70.06 (1) (b)]" (Penal Law § 70.06 [1] [a]). Thereunder, "[f]or the purpose of determining whether a prior conviction is a predicate felony conviction," in relevant part,"[t]he conviction must have been in this state of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state irrespective of whether such sentence was imposed" (Penal Law § 70.06 [1] [b] [i]). "To determine whether a foreign crime is equivalent to a New York felony, the court must examine the elements of the foreign statute and compare them to an analogous Penal Law felony, for it is the statute upon which the indictment was drawn that necessarily defines and measures the crime" (People v Drayton, 222 AD3d 1045, 1048 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 41 NY3d 1001 [2024]).
Defendant is [*9]correct that, as it currently stands, marihuana is not defined as a controlled substance for which an individual may be convicted of criminal possession of a controlled substance in the fifth degree (see Penal Law 220.06 [1]; Public Health Law § 3306). However, "whether a prior conviction is a predicate felony conviction is to be determined by applying the provisions of the law which were in effect at the time the crime was committed" (People v Carter, 173 AD2d 631, 631 [2d Dept 1991], lv denied 78 NY2d 963 [1991]). Thus, as marihuana was defined as a controlled substance in New York at the time of defendant's 2014 Florida conviction (see Public Health Law former § 3306, as amended by L 2013, ch 341, § 1; see also Public Health Law former § 3306, as amended by L 1985, ch 664, § 1), viewing "the law in effect at the time [the conviction] was obtained" (People v Gamlen, 222 AD3d 1440, 1441 [4th Dept 2023], lv denied 41 NY3d 965 [2024]; see People v Sanford, 162 AD2d 560, 561 [2d Dept 1990], lv denied 78 NY2d 1080 [1991]; cf. People v Muhammad, 168 AD3d 549, 549-550 [1st Dept 2019], lv denied 33 NY3d 979 [2019]), defendant's Florida conviction was a valid predicate felony. To the extent the Court of Appeals has indicated in dicta that the language of Penal Law § 70.06 (1) (b) (i) evidences the Legislature's intent to evaluate prior out of state felonies "in relation to the law at the time of the [commission of the] subsequent crime" for second felony offender purposes (People v Walker, 81 NY2d 661, 665 [1993]), marihuana was still defined as a controlled substance at the time of the commission of the present felony offense in March 2020 (see Public Health Law § 3306, as amended by L 2018, ch 428, § 1). Accordingly, defendant's Florida conviction was a valid predicate felony under both the law at the time of his Florida conviction as well as the law at the time of the commission of the present felony offense.
We further do not find that the sentence imposed was unduly harsh or severe and decline defendant's request to modify it in the interest of justice (see CPL 470.15 [6] [b]). Defendant's remaining arguments have been examined and found to be lacking in merit.
Pritzker and Ceresia, JJ., concur.
McShan, J. (concurring in part and dissenting in part). I concur with my colleagues in the majority on most of the arguments raised by defendant. However, I believe that corrective action is necessary with respect to Supreme Court's improper empanelment of an anonymous jury. On that basis, I would exercise this Court's interest of justice jurisdiction and order a new trial (see CPL 470.15 [3] [c]).
To begin, for the reasons that are thoroughly discussed in the dissent in People v Goberdhan (___ AD3d ___ [3d Dept 2025] [decided herewith]), I believe that Supreme Court empaneled an "anonymous jury" in this case. That much is clear from the court's statement on the record to counsel and defendant that references to prospective jurors would be done by assigned [*10]juror number "to avoid confusion." Glaringly absent from the record, however, is any indication that the jury was provided with the same explanation as to the concealment of their names during the empanelment process. The admission of a list of the prospective jurors' names and assigned juror numbers suffers from a similar flaw, as there is no indication that prospective jurors were made aware of that fact and offered any reason for the practice.[FN7] Stated simply, Supreme Court empaneled an anonymous jury without the requisite factual predicate and compounded that mistake by providing no explanation to the jury for the procedure (see People v Flores, 32 NY3d 1087, 1088 [2018]). The process constituted error in its entirety.
As to the propriety of employing our interest of justice jurisdiction to take corrective action in this case, the majority's reliance upon the above-referenced facts lends to the apparent conclusion that defendant was not prejudiced by the procedure; in other words, a harmless error analysis, albeit without explicit reference (see People v Tenace, 229 AD3d 908, 911 [3d Dept 2024]; People v Heidrich, 226 AD3d 1096, 1099 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; People v Flores, 153 AD3d 182, 193-195 [2d Dept 2017], affd 32 NY3d 1087 [2018]). In my view, doing so only underscores the perils of speculating that there was no causal effect from empaneling an anonymous jury, as those facts would have had no effect on the jury's understanding of the procedure and why it was being employed at all (see People v Flores, 153 AD3d at 194-195). On that, I need only reference the Court of Appeals' characterization of employing an anonymous jury, to the extent it was permissible at all at the time of this trial, as "extraordinary" (People v Flores, 32 NY3d at 1088). Because a deviation from that process is equally extraordinary, I believe that corrective action is warranted in this case.
Further, as it concerns defendant's request for a justification charge in self-defense of a robbery, I believe that my colleagues in the majority have articulated a standard that focuses too narrowly on the temporal aspect of the victim's action. On that, I write only to express my fear that the majority's determination may insulate future conduct that could otherwise fairly be characterized as a robbery.
Relevant here, a defendant may be entitled to a charge that his or her use of deadly physical force was justified if he or she can establish that he or she reasonably believed that the victim was "committing or about to commit a . . . robbery" (Penal Law § 35.15 [2] [b]). Robbery is defined as a "forcible stealing" where the "immediate use [or threatened use] of physical force" in order to "[p]revent[ ] or overcome[e] resistance to the taking of the property or to the retention thereof immediately after the taking" occurs "in the course of committing a larceny" (Penal Law § 160.00 [emphasis added]). Defining the term "immediately" is critical; it requires [*11]that a court assess a multitude of factors, including "the distance between the crime and the use of force or a dangerous instrument, the elapsed time since the actual taking of the property, whether the culprit is in possession of the fruits of the crime, whether he or she had reached a place of temporary safety and whether police, security guards or citizens were in close pursuit" (People v Robertson, 53 AD3d 791, 792 [3d Dept 2008], lv denied 11 NY3d 857 [2008]; see generally People v Gladman, 41 NY2d 123, 129 [1976]; People v Jordan, 111 AD3d 971, 972 [3d Dept 2013], lv denied 22 NY3d 1088 [2014]).
The majority's conclusion focuses on only one of those considerations; namely, the passage of hours between the taking of the money and the moment at which the victim picked up the board and threatened defendant. However, "although [a] thief may have procured possession of the property of another without force or violence, the removal of the property from the presence of that other, with force or violence, constitutes robbery" (People v Glynn, 54 Hun 332, 334 [Sup Ct, Gen Term, 1st Dept 1889], affd 123 NY 631 [1890]; see People v Rudelt, 6 AD2d 640, 642 [3d Dept 1958]). By defendant's account, the victim had taken money that was on his keyboard while he was briefly outside the home. Upon discovering that the money was gone, he confronted the victim and they "went back and forth for hours about the money." At the tail end of the argument, the victim picked up a board — a two-by-four — and "acted like she was going to hit" defendant, prompting him to pick up the hammer. The two continued arguing, and defendant stated, in connection with the victim's threats to call the police, that he was still waiting for her to return the money. Viewing that evidence in the light most favorable to defendant (see People v Castillo, 42 NY3d 628, 631 [2024]; People v Swanton, 216 AD3d 1441, 1443 [4th Dept 2023]), the jury could have concluded that defendant held a reasonable belief that a larceny had occurred and, only when the victim picked up the board did her actions "escalate[ ] into the crime of robbery [by virtue of her] threatened . . . use [of] physical force against [defendant] for the purpose of preventing or overcoming resistance to the retention of the [money] immediately after the taking" (People v Carr-El, 287 AD2d 731, 732 [2d Dept 2001] [internal quotation marks, brackets, ellipsis and citation omitted], affd 99 NY2d 546 [2002]; see e.g. People v Telesford, 149 AD3d 170, 180 [1st Dept 2017]; People v Jones, 300 AD2d 30, 30 [1st Dept 2002], lv denied 99 NY2d 615 [2003]; People v Thomas, 226 AD2d 120, 120 [1st Dept 1996], lv denied 88 NY2d 886 [1996]; People v Brock, 125 AD2d 401, 401 [2d Dept 1986], lv denied 69 NY2d 824 [1987]; see also People v Hilton, 25 AD3d 505, 505 [1st Dept 2006], lv denied 6 NY3d 895 [2006], cert denied 549 US 958 [2006]).[FN8] Notably, the victim had not yet reached safety during their encounter and, by defendant's account, her threatened [*12]use of force occurred after he had confronted her about the missing money. Thus, notwithstanding the gap in time between the taking and the threat of force, "the question [of] whether [those acts] immediately succeeded the other would remain an issue of fact" for the jury to resolve (People v Carr-El, 99 NY2d 546, 547-548 [2002]; see People v Irving, 130 AD3d 844, 845 [2d Dept 2015]; People v Jones, 300 AD2d at 30; People v Straker, 291 AD2d 246, 246 [1st Dept 2002], lv denied 98 NY2d 713 [2002]; People v Johnstone, 131 AD2d 782, 783 [2d Dept 1987], lv denied 70 NY2d 800 [1987]; People v Dekle, 83 AD2d 522, 522 [1st Dept 1981], affd 56 NY2d 835 [1982]; People v Rudelt, 6 AD2d at 642; see also People v Gordon, 23 NY3d 643, 651 [2014]; People v Bachmann, 237 AD2d 897, 898 [4th Dept 1997], lv denied 90 NY2d 855 [1997]).
Nevertheless, as noted by my colleagues in the majority, defendant's justification for responding to the attempted robbery is appropriately tempered by the principle that, although his conduct could be justified at the inception of an encounter, it could also terminate at a later point if he no longer could reasonably maintain the belief that the victim posed a threat to him (see People v Castillo, 42 NY3d at 631; People v Goetz, 68 NY2d 96, 106 n 5 [1986]). To that end, I am in accord with the majority's determination that defendant was required to demonstrate that he was justified for each strike to the victim, and that would remain true of the justification afforded in response to a robbery. Had the evidence reflected that defendant only struck the victim a single time, defendant would likely have been entitled to the justification charge permitting the jury to consider whether he employed deadly force in response to a robbery (see People v Taylor, 92 AD3d 556, 557 [1st Dept 2012]). However, because the sum of evidence established that the victim suffered multiple wounds to her hands and, as conceded by defendant, he struck the victim multiple times with the hammer, I do not believe that the charge was required (see generally People v Rodriguez, 33 AD3d 389, 389 [1st Dept 2006], lv denied 7 NY3d 904 [2006]; People v Del-Debbio, 244 AD2d 195, 195 [1st Dept 1997], lv denied 91 NY2d 925 [1998]).
Lynch, J. (concurring in part and dissenting in part).
I join in the dissent solely with respect to Supreme Court's improper empanelment of an anonymous jury and agree that this Court should order a new trial in the interest of justice.
ORDERED that the judgment is modified, on the law, by reversing defendant's convictions of unlawful imprisonment in the second degree under count 1 of the indictment and attempted assault in the first degree under count 3 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.

Footnotes

Footnote 1: Despite the People's assertion to the contrary, this claim need not be preserved (see People v Martinez, 81 NY2d 810, 812 [1993]) and, although not directly relevant here, may be raised by this Court sua sponte (see People v McCann, 126 AD3d 1031, 1034 [3d Dept 2015], lv denied 25 NY3d 1167 [2015]).

Footnote 2: This call, in which the caller can be heard asking for help, was admitted into evidence and published to the jury.

Footnote 3: The victim's treating physician testified as to her injuries — which included injuries to her hand as well as an open skull fracture and bleeding on the brain — and the necessary medical intervention. He opined that her injuries would have been fatal without treatment.

Footnote 4: To the extent defendant's vague and unspecified weight of the evidence challenge can be read as alleging that the People failed to disprove his justification defense (see generally People v Brooks, 233 AD3d at 1359), viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the evidence supports the finding that defendant's use of the hammer was not in reasonable response to a perceived deadly threat (see People v Contompasis, 236 AD3d 138, 142 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]; People v Mercer, 221 AD3d 1259, 1264 [3d Dept 2023], lv denied 41 NY3d 1003 [2024]).
Footnote 5: As addressed more completely in People v Goberdhan (___ AD3d ___ [3d Dept 2025] [decided herewith]), we do not find this to be a mode of proceedings error and, as such, the issue must be preserved with a proper objection (see People v Jeremiah, 147 AD3d 1199, 1205-1206 [3d Dept 2017], lv denied 29 NY3d 1033 [2017]).

Footnote 6: Even if a person reasonably believes that another is using or about to use deadly physical force, he or she may not do so if able to retreat; however, there is no such duty to retreat when "he or she is . . . in his or her dwelling and not the initial aggressor" (Penal Law § 35.15 [2] [a] [i]).

Footnote 7: The mere mention of a prospective juror's first name merits little discussion with respect to the anonymity of the juror. To that end, that singular instance, without any context, fails to dissipate the error pervading the entire empanelment process.

Footnote 8: Prior to the victim threatening the use of force with the board in hand, defendant could not claim justification for employing deadly force (see People v Taylor, 92 AD3d 556, 557 [1st Dept 2012]).